This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37856**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.

**HUGO VASQUEZ-SALAS,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Fred T. Van Soelen, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}** Defendant Hugo Vasquez-Salas appeals his conviction for possession of burglary tools. On appeal, Defendant claims (1) the district court erred in denying his motion to suppress; (2) his right of cross-examination was improperly limited; (3) he

received ineffective assistance of counsel; (4) the evidence was insufficient to support the conviction; and (5) cumulative error requires reversal. We affirm.[1]

## I.      The District Court Did Not Err in Denying the Motion to Suppress

**{2}**      Defendant claims that the district court erred in denying his motion to suppress. Our review of a district court's order on a motion to suppress presents "a mixed question of fact and law." *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861. "In reviewing a district court's ruling denying a motion to suppress, the appellate courts draw all reasonable inferences in favor of the ruling and defer to the district court's findings of fact as long as they are supported by substantial evidence." *State v. Murry*, 2014-NMCA-021, ¶ 10, 318 P.3d 180. "[W]e then review de novo the [district] court's application of law to the facts to determine whether the search or seizure were reasonable." *Leyva*, 2011-NMSC-009, ¶ 30. Here, Defendant, who was a passenger in a vehicle lawfully stopped for a traffic offense, is challenging the authority of the officer to expand the seizure by asking him for his identification. Defendant bases his argument on *State v. Affsprung*, 2004-NMCA-038, ¶¶ 4, 20-21, 135 N.M. 306, 87 P.3d 1088, where this Court held that the defendant's mere presence as a passenger in a vehicle stopped for a traffic violation did not provide individualized suspicion for the officer to ask for the passenger's identification. To satisfy *Affsprung*, we must consider whether there was reasonable suspicion to subject Defendant to the officer's questions. *See id.* ¶ 9.

**{3}**      "A police officer can initiate an investigatory traffic stop without infringing the Fourth Amendment [of the United States Constitution,] or Article II, Section 10 [of the New Mexico Constitution] if the officer has a reasonable suspicion that the law is being or has been broken." *State v. Martinez*, 2018-NMSC-007, ¶ 10, 410 P.3d 186 (internal quotation marks and citation omitted). We "will find reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *State v. Dopslaf*, 2015-NMCA-098, ¶ 8, 356 P.3d 559 (internal quotation marks and citation omitted).

**{4}**      In *Affsprung*, 2004-NMCA-038, ¶ 2, the defendant was a passenger in a vehicle that was stopped by a law enforcement officer for a faulty license plate light. The officer, who observed no suspicious behavior from the defendant, asked the defendant for identification. *Id.* ¶¶ 2, 4. The officer then ran a wants and warrants check of the defendant, discovering an outstanding warrant. *Id.* ¶¶ 2-3. This Court held that the defendant's "mere presence" in the stopped vehicle, where the officer had "no suspicion whatsoever of criminal activity or danger of harm from weapons[,]" could not justify even a "minimal intrusion to tip the balance in favor of public or officer safety over individual Fourth Amendment privacy." *Id.* ¶ 20.

---

1Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we reserve discussion of the facts as necessary to our analysis.

**{5}** The facts in this case are distinguishable from *Affsprung.* Unlike *Affsprung*, the officer's questioning of Defendant here was based on the officer's suspicion of criminal activity. *See id.* ¶ 11 (observing that expansion of a detention "requires reasonable suspicion . . . that the driver or passenger has been or is engaged in criminal activity other than the initial traffic violation"). The suspected criminal activity was the possession of burglary tools. "Possession of burglary tools consists of having in the person's possession a device or instrumentality designed or commonly used for the commission of burglary and under circumstances evincing an intent to use the same in the commission of burglary." NMSA 1978, § 30-16-5 (1963).

**{6}** At the hearing on the motion to suppress, Officer Brice Stacy of the Clovis Police Department testified that he stopped a vehicle for a broken taillight. The stop occurred shortly before 4:00 a.m. The driver and Defendant, who was sitting in the front passenger seat, were in the vehicle. When Officer Stacy approached the vehicle, he noticed an open backpack in the back seat, with various objects and tools sticking out. Officer Stacy testified that he has experience and training in identifying burglary tools and was alerted by the items in the backpack, specifically the "combination of them." He identified the items as bolt cutters, protective eyeglasses, two pairs of gloves, and a facemask, which was described as a bandana. Officer Stacy initially asked for identification from the driver, who was nervous and did not want to give the Officer Stacy any identifiers. The driver eventually stated that he was an unlicensed minor. In an apparent attempt to determine whether Defendant could legally drive the vehicle away, Officer Stacy asked Defendant whether he had a driver's license. Officer Stacy closed out his testimony by stating that by the time he asked Defendant for his identification he already suspected that the items in the backseat were burglary tools. In announcing its ruling, the district court noted the requirement under *Affsprung* for independent suspicion relating to passengers and denied Defendant's motion after concluding that the totality of the circumstances, including the tools, the time of day, and the driver's nervousness, supported reasonable suspicion to question Defendant. We agree with the district court's ruling.

**{7}** Defendant claims that the items in the backpack were common household items and could not form the basis for reasonable suspicion, even if considered in combination with each other. In support, Defendant refers us to *State v. Estrada*, 1991-NMCA-026, ¶¶ 10-11, 111 N.M. 798, 810 P.2d 817, for the proposition that the presence of an innocent item in a vehicle, without more, will not provide reasonable suspicion to expand a traffic detention. However, in that case the suspicion was limited solely to a misplaced tire in the vehicle. *See id.* ¶ 11 ("[T]he only individualized fact known by the agent that could possibly have raised his suspicions was the misplaced spare tire. Nothing in the record indicates the driver or his passenger were nervous or displayed unusual behavior of any sort."). As we have noted, the present case involved multiple items that Officer Stacy believed were burglary tools, as well as other factors, including Officer Stacy's testimony that his training and experience provided a basis for reasonable suspicion of criminal activity. *Cf. id.* ¶ 13 (observing that the stipulated facts in that case contained no information about the agent's experience with spare tires and how they could relate to suspicion of criminal activity). Moreover, the items in the

backseat were readily available to both Defendant and the driver. In considering this with the other facts known to Officer Stacy, the limited questioning of Defendant being challenged here, where Officer Stacy simply asked Defendant for his identifiers, was not unreasonable. *See Leyva*, 2011-NMSC-009, ¶ 9 (observing that the determination of reasonableness involves a balancing of the public's interest and the individual's right to be free from arbitrary law enforcement interference); *State v. Funderburg*, 2008-NMSC-026, ¶ 15, 144 N.M. 37, 183 P.3d 922 ("[R]easonable suspicion is a commonsense, nontechnical conception, which requires that officers articulate a reason, beyond a mere hunch, for their belief that an individual has committed a criminal act." (alteration, internal quotation marks, and citation omitted)).

**{8}**     Because Officer Stacy's suspicion was reasonable, we conclude that the district court's denial of the motion to suppress did not constitute error.

## II.     The District Court Did Not Err in Limiting Defendant's Cross-Examination

**{9}**     Defendant claims that the district court erred in preventing him from cross-examining an officer about the driver's criminal history, including possession of a controlled substance. We agree with the district court's ruling that this line of questioning was irrelevant. *See* Rule 11-401 NMRA. Even assuming, arguendo, that a case for relevancy could be made, Defendant has not established any prejudice, because it is speculative to say that this would have helped Defendant or would not have instead been viewed by the jury in a manner that further implicated Defendant's own guilt. *See State v. Fernandez*, 1994-NMCA-056, ¶ 13, 117 N.M. 673, 875 P.2d 1104 ("In the absence of prejudice, there is no reversible error.").

## III.     Defendant Did Not Demonstrate Ineffective Assistance of Counsel

**{10}**     Defendant claims that trial counsel was ineffective. We will not decide an ineffective assistance of counsel claim on direct appeal unless a defendant makes a prima facie showing that counsel was incompetent, and the incompetence resulted in prejudice to the defense. *See State v. Richardson*, 1992-NMCA-112, ¶ 4, 114 N.M. 725, 845 P.2d 819, *abrogated on other grounds by Allen v. LeMaster*, 2012-NMSC-001, 267 P.3d 806. A defendant must show that counsel's actions were not simply matters of strategy, were made part of the record, and prejudiced the defendant. *See State v. Baca*, 1997-NMSC-059, ¶ 25, 124 N.M. 333, 950 P.2d 776 (stating that "a prima facie case is not made when a plausible, rational strategy or tactic can explain the conduct of defense counsel" (internal quotation marks and citation omitted)).

**{11}**     Here, Defendant's claim is that defense counsel failed to file a motion to suppress based on possible deficiencies in the *Miranda* warnings. Defendant does not explain what those deficiencies may have been or how the record shows that a motion to suppress would have had merit, and thus we decline to address his argument. *See State v. Bernard*, 2015-NMCA-089, ¶ 35, 355 P.3d 831 (refusing to consider the ineffective assistance of counsel claim because the allegations were general, did not provide detailed explanations or record citations to support claims about trial counsel's

performance or prejudice, and the claims were speculative). To the extent that this claim may have merit based on additional matters not currently in the record, we believe that it is more appropriately addressed in a habeas corpus proceeding. *See State v. Grogan*, 2007-NMSC-039, ¶ 9, 142 N.M. 107, 163 P.3d 494 (explaining that "[h]abeas corpus proceedings are the preferred avenue for adjudicating ineffective assistance of counsel claims" (internal quotation marks and citation omitted)).

## IV.     The Evidence Is Sufficient to Support Defendant's Conviction

**{12}**   Defendant challenges the sufficiency of the evidence to support his conviction for possession of burglary tools. Our review of sufficiency of the evidence employs a two-step process in which we first "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. Then we must "make a legal determination of whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *State v. Apodaca*, 1994-NMSC-121, ¶ 6, 118 N.M. 762, 887 P.2d 756 (internal quotation marks and citation omitted).

**{13}**   In order to support the conviction, the evidence had to show that Defendant was in possession of bolt cutters, pliers, a hammer, a face mask, gloves, or a pipe wrench, such tools were designed for or commonly used in the commission of a burglary, and he intended these tools to be used in the commission of a burglary. *See* UJI 14-1633 NMRA. *See generally State v. Montoya*, 2021-NMCA-006, ¶ 23, 482 P.3d 1285 (emphasizing that the crime of possession of burglary tools requires both possession and "separate evidence of a defendant's intent to use the tool to commit a burglary"), *cert. denied*, 2020-NMCERT-___ (No. S-1-SC-38638, Feb. 4, 2020).

**{14}**   In addition to the evidence discussed above relating to the items in the backpack, the State presented Officer Wormley's testimony that Defendant made several post-arrest admissions. Specifically, Defendant acknowledged that both the backpack and the tools were his. Officer Wormley further stated that Defendant not only acknowledged his ownership of the bolt cutters but expressed irritation that they were being taken from him, stating, "Man, I just bought those bolt cutters." Defendant's own admissions are sufficient to prove Defendant possessed the tools in the backpack.

**{15}**   With respect to Defendant's argument that the evidence is insufficient to establish specific intent to use the items in the commission of a burglary, we first note that "[i]ntent can rarely be proved directly and often is proved by circumstantial evidence." *State v. Durant*, 2000-NMCA-066, ¶ 15, 129 N.M. 345, 7 P.3d 495; *see also State v. Muniz*, 1990-NMCA-105, ¶ 3, 110 N.M. 799, 800 P.2d 734 ("Intent may be proved by inference from the surrounding facts and circumstances.").

**{16}**   Here, in addition to acknowledging possession of the tools, Defendant admitted that the items were in fact used to commit burglaries. Although Defendant claimed that it

was his cousin who used these items to commit burglaries, the jury could reject Defendant's attempt to shift blame. *See State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314 (noting that the fact-finder is free to reject a defendant's version of events). Defendant's acknowledgment also undermines his claim that these items were simply common, everyday items that did not indicate a criminal purpose. The admission is also in accord with Officer Wormley's testimony that the items were "consistent with items [that he] had found in his training and experience to be used for burglary."

{17}     In considering the issue of intent, the fact-finder could give significant weight to Defendant's admission that the items not only could be used for a burglarious purpose but had in fact been used. Other factors also supported the element of intent, including the time of day (shortly before 4:00 a.m.), the accessibility of the items, Defendant's initial attempts to conceal his identity, and the fact that one of the items (the facemask/bandana) was readily available for use to conceal his face. Based on the foregoing, we conclude that the evidence was sufficient to support Defendant's conviction.

## V.     There Is No Cumulative Error

{18}     Defendant claims cumulative error. However, because we hold that no error occurred, it follows that no cumulative error occurred. *See State v. Aragon*, 1999-NMCA-060, ¶ 19, 127 N.M. 393, 981 P.2d 1211 (stating that when there is no error, "there is no cumulative error").

## CONCLUSION

{19}     For the reasons set forth above, we affirm.

{20}     **IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**BRIANA H. ZAMORA, Judge**